UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

JOHN H. WINKLER, JR.,              )
                                   )
            Plaintiff,             )
                                   )
vs.                                )     Case No. 2:19 CV 55 ACL
                                   )
ANDREW SAUL,                       )
                                   )
Commissioner of Social Security,   )
                                   )
            Defendant.             )

**MEMORANDUM**

Plaintiff John H. Winkler, Jr. brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the Social Security Administration Commissioner's denial of his applications

for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and

Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Winkler's severe impairment,

he was not disabled as he had the residual functional capacity ("RFC") to perform work existing

in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with

consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is

presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

## I.  Procedural History

Winkler filed his applications for DIB and SSI on July 15, 2016, claiming that he became

unable to work on August 1, 2010.   (Tr. 11, 22.)   In his Disability Report, Winkler alleged

disability due to depression, "heart trouble," Achilles heel rupture, cholesterol problems, back

problems, and possible arthritis.   (Tr. 201.)   Winkler was 52 years of age at the time of his

alleged onset of disability.   (Tr. 20.)   His applications were denied initially.   (Tr. 94-104.)

Following an administrative hearing, Winkler's claims were denied in a written opinion by an

ALJ, dated November 26, 2018.   (Tr. 11-22.)   Winkler then filed a request for review of the

ALJ's decision with the Appeals Council, which was denied on February 13, 2019.   (Tr. 1-3.)

Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R.

§§ 404.981, 416.1481.

In this action, Winkler argues that the ALJ "erred in assessing the RFC."   (Doc. 12 at p.

7.)

## II.   The ALJ's Determination

The ALJ first found that Winkler met the insured status requirements of the Social

Security Act through December 31, 2014.[1]   (Tr. 13.)   She found that Winkler had not engaged

in substantial gainful activity since August 1, 2010, the alleged onset date.   *Id.*   In addition, the

ALJ concluded that Winkler had the following severe impairment: degenerative disc disease.

*Id.*   The ALJ found that Winkler did not have an impairment or combination of impairments that

met or medically equaled the severity of one of the listed impairments.   (Tr. 16.)

As to Winkler's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to

---

[1]Because Winkler's date last insured is December 31, 2014, he must establish that he was
disabled between August 1, 2010, and December 31, 2014 in order to qualify for disability
benefits under Title II.   *See* 20 C.F.R. § 404.130.

perform medium work as defined in 20 CFR 404.1567(c) and
416.967(c) except that the claimant can never climb ladders, ropes,
or scaffolds, or be exposed to unprotected heights or hazardous
work environments.   He can frequently climb ramps and stairs,
balance, stoop, kneel, crouch, and crawl.   He must avoid
concentrated exposure to extreme cold and vibration.   He will be
off-task 5% of the workday.

*Id.*

The ALJ found that Winkler was unable to perform any past relevant work, but was

capable of performing other jobs existing in significant numbers in the national economy, such

as packager, cleaner, and laundry worker.   (Tr. 20-21.)   The ALJ therefore concluded that

Winkler was not under a disability, as defined in the Social Security Act, from August 1, 2010,

through the date of the decision.   (Tr. 21.)

The ALJ's final decision reads as follows:

Based on the application for a period of disability and disability
insurance benefits protectively filed on July 15, 2016, the claimant
is not disabled under sections 216(i) and 223(d) of the Social
Security Act.

Based on the application for supplemental security income filed on
July 15, 2016, the claimant is not disabled under section
1614(a)(3)(A) of the Social Security Act.

*Id.*

## III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial

evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389,

401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less

than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.   The credibility findings made by the ALJ.

2.   The plaintiff's vocational factors.

3.   The medical evidence from treating and consulting physicians.

4.   The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.   Any corroboration by third parties of the plaintiff's impairments.

6.   The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the

evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).  "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."  *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted).  *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.   *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work."   *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to

determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."   *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner

will find that the claimant is disabled.   20 C.F.R. §416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV.   Discussion

Plaintiff argues that the ALJ erred in determining his RFC.   He contends that, in determining his RFC, the ALJ: failed to include a narrative discussion, failed to consider the effectiveness and side effects of his medications, and did not rely on the opinion of any examining physician.[2]

It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (2001).   "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC."   *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).   An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record.   *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).   "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."   *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).   There is no requirement, however, that an RFC finding be supported by a specific medical opinion.   *See Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011) (An ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's

---

[2]Although Winkler alleged multiple physical impairments as well as a mental impairment, he only challenges the ALJ's findings with regard to his degenerative disc disease.   As such, the Court will only discuss evidence that pertains to this impairment.

physicians.").   Furthermore, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."   *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007).

The ALJ found that the record was not consistent with Winkler's subjective complaints of disabling symptoms.   (Tr. 17.)   When determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints.   *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).   In so doing, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.   *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

The ALJ first discussed Winkler's daily activities.   She noted that Winkler reported no difficulty in sitting or standing in his function report; reported bicycling, helping his mother with household chores, and doing yoga; and reported he is able to walk for a half-mile at a time before needing to rest, and can repeat this pattern up to three times a day.   (Tr. 17-18.)   The ALJ found that Winkler's reported activities were not limited to the extent one would expect, given his complaints of disabling pain and limitations.   (Tr. 17.)   *See Haley v. Massanari,* 258 F.3d 742, 748 (8th Cir. 2001) (Significant daily activities may be inconsistent with claims of disabling pain).

The ALJ next discussed the objective medical evidence.   She noted that Winkler reported only "mild to moderate" chronic low back pain to an examining nurse practitioner in July 2017.   (Tr. 18, 462.)   Straight leg raise tests have been negative.   (Tr. 18, 287, 300.)   The

ALJ noted that Winkler underwent a consultative examination performed by Raymond Leung, M.D., on October 22, 2016, which was largely normal.   (Tr. 18-19, 398-403.)   Winkler complained of arthritis in his low back but reported his pain medication helped, and was able to walk a half-mile and lift twenty pounds.   *Id.*   He reported that his right Achilles heel ruptured in 2011, and that he has decreased range of motion in the right ankle as a result.   *Id.*   Upon examination, Winkler walked with a mild limp but was able to walk fifty feet unassisted, tandem walk, hop, walk on his heels, squat, and had no difficulty getting on and off the exam table.   *Id.* He was only unable to heel walk.   *Id.*   Dr. Leung noted mild weakness in the legs, but normal sensation, normal reflexes, full lumbar range of motion, and negative straight leg raising tests. *Id.*   Further, the ALJ noted that the record does not contain any opinions from treating or examining physicians indicating that Winkler is disabled or that he has any limitations.   (Tr. 18.) The ALJ reasonably concluded that the minimal findings on examination were inconsistent with Winkler's allegations of disabling limitations.   *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing disability); *see also Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016) (allegations of disability that are inconsistent with the objective medical evidence weighs against the credibility of the claimant's allegations); *Black v. Apfel*, 143 F.3d 383, 386-87 (8th Cir. 1998) (a conservative course of treatment is inconsistent with complaints of debilitating pain).

        The ALJ stated that Winkler acknowledged that the only medications he had used in the two days prior to the hearing were Tylenol and aspirin.   (Tr. 18, 35.)   Although Winkler testified that he no longer takes prescription medications due to lack of insurance, he admitted that he had not attempted to obtain prescriptions from a clinic that provides low cost treatment,

despite having previously received services there.   (Tr. 18, 36.)   In some circumstances, failure to seek medical treatment based on inadequate financial resources may explain a plaintiff's failure.   *See Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989).   In this matter, however, the record does not reflect that Winkler sought any additional options for obtaining his medications that may have been offered to those who are indigent.   *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (holding that, despite a plaintiff's argument that he was unable to afford prescription pain medication, an ALJ may discredit complaints of disabling pain where there is no evidence that the claimant sought treatment available to indigents or chose to forego smoking to help finance treatment); *McGee v. Astrue*, No. 4:09CV1011MLM, 2010 WL 2835660, at *9 (E.D. Mo. July 15, 2010) (plaintiff did not seek assistance in paying for physical therapy).

Next, the ALJ pointed out that Winkler stopped working for reasons not related to his allegedly disabling impairment.   (Tr. 18.)   Winkler testified that he stopped working in 2010 because he was laid off.   (18, 31.)   Leaving work due to a lay off weighs against credibility. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015); *Medhaug v. Astrue*, 578 F.3d 805, 816-11 (8th Cir. 2009) (affirming the denial of benefits where claimant left work due to being laid off).   Additionally, Winkler testified that he received unemployment benefits after his alleged onset date.   (Tr. 18, 32.)   The ALJ found that Winkler's application for unemployment, which requires a statement that the individual is ready and willing to work, was inconsistent with his allegations of disability.   (Tr. 18.)   *See Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014) (finding that collection of unemployment benefits undermines the credibility of claimant).

The ALJ reasonably concluded based on all the factors discussed above that Winkler's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record.   (Tr. 18.)

The ALJ next discussed the medical opinion evidence.   In November 2016, state agency medical consultant Denise R. Trowbridge, M.D., expressed the opinion that Winkler can lift and carry fifty pounds occasionally, and twenty-five pounds frequently; sit, stand, and walk six hours in an eight-hour workday; occasionally climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme cold, vibration, and hazards.   (Tr. 19, 74-76.)   The ALJ indicated that she was assigning "considerable but not great weight" to Dr. Trowbridge's opinions.   (Tr. 19.)   She explained that Dr. Trowbridge's opinions were generally consistent with the record, although Winkler was more limited with respect to his ability to climb ladders, ropes, and scaffolds than described by Dr. Trowbridge.   *Id.*

The ALJ summarized that Winkler has a history significant for degenerative disc disease, and that it was reasonable to conclude his impairments would limit him to medium work and result in restrictions on his ability to climb, balance, stoop, kneel, crouch, crawl, tolerate extreme cold and vibration, remain on task, and be exposed to workplace hazards.   (Tr. 20.)

Winkler first argues that the ALJ's decision does not "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)," as required by Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).   The Court disagrees.   The ALJ need not provide a narrative discussion immediately following each statement of an individual limitation in the RFC, if the court can otherwise discern the elements of the ALJ's decision-making.   *Depover v. Barnhart,* 349 F.3d 563, 567 (8th Cir. 2003). Moreover, the ALJ is not required to make explicit findings for every aspect of the RFC.   *See Tawfall v. Astrue,* No. 4:09CV727DDN, 2010 WL 3781807, at *10 (E.D. Mo. Sept. 21, 2010).

The ALJ adequately discussed the relevant medical and nonmedical evidence, why she believed it contradicted Winkler's allegations of disability, and explained how she determined her RFC assessment.   This narrative bridge to the RFC determination is more than adequate.   *See Crabtree v. Colvin,* , No. 1:14CV29DDN, 2014 WL 6977779, at *6-7 (E.D. Mo. Dec. 9, 2014).

Winkler next argues that the ALJ did not "adequately address Plaintiff's credible symptoms/side effects of necessary medications in her RFC decision."   (Doc. 12 at p. 8.)   This argument fails for two reasons.   First, as discussed above, the ALJ did in fact discuss Winkler's prescribed medications.   (Tr. 18.)   Second, Winkler fails to indicate how further discussion of this factor would be favorable to his claim.   The ALJ pointed out that Winkler was not taking any prescribed medications at the time of the hearing, but was only taking Tylenol and aspirin. The ALJ noted that, despite Winkler's claimed lack of insurance as an excuse for not taking his medications, Winkler admitted that he had not attempted to avail himself of available free or low-cost options.   Thus, the ALJ properly found this factor was inconsistent with Winkler's allegations of disabling impairments.

Winkler also contends that the ALJ erred in assigning weight to the opinion of the state agency physician, Dr. Trowbridge.   He further argues that, because no examining or treating physician offered an opinion as to Winkler's RFC, the ALJ erred in forming "her own residual functional capacity on her own."   (Doc. 12 at p. 8.)

It was proper for the ALJ to consider and assign weight to Dr. Trowbridge's opinions. *See, e.g.*, *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014) (noting that state agency medical consultants' opinions supported the RFC finding and stating, "'State agency medical and psychological consultants are highly qualified physicians'" whose expert opinions cannot be ignored by ALJs or the Appeals Council") (quoting SSR 96–6P, 1996 WL 374180, *2 (July 2,

1996)).   Dr. Trowbridge's opinions were based on a review of the medical record.   She provided a detailed summary of the treatment notes in the record, including Dr. Leung's exam findings and imaging findings, as well as a summary of Winkler's testimony regarding his daily activities.   (Tr. 76.)

Winkler notes that Dr. Trowbridge did not have the opportunity to review an MRI that Winkler underwent in February 2017, as he reviewed the record in November 2016.   He states that the MRI revealed the following findings: moderate loss of height and intensity of the L5-S1 intervertebral disc; mild to moderate loss of height of the L3-L4 and L4-L5 intervertebral discs; mild right lateral disc bulge at L2-L3 without significant neural encroachment; narrowing of the L4 neural foramina; an old mild compression deformity of L2; and mild retrolisthesis L2 on L3 and L3 on L4.   (Tr. 486.)   The impression of the radiologist was bilateral C4 neural foramina narrowing and multiple degenerative disc disease, with no focal disc herniations and no central spinal stenosis.   *Id.*   Winkler fails to explain how these findings would change Dr. Winkler's opinions or how they are inconsistent with the ALJ's RFC determination.   Significantly, Dr. Leung examined Winkler only three months prior to the MRI and found few abnormalities.   Dr. Trowbridge had access to Dr. Leung's report and cited his findings.   Dr. Trowbridge also reviewed findings from a lumbar x-ray Winkler underwent in November 2016, which revealed slight anterior compressions involving the L1-L2 vertebral bodies, slight disc space narrowing at the L4-5 and L5-S1 disc spaces, and spondylosis throughout the spine.   (Tr. 76, 415.)   Further, the ALJ did not rely on Dr. Trowbridge's opinions.   Instead, she determined that Winkler had greater limitations than those found by Dr. Trowbridge.   Thus, the ALJ did not err in weighing the medical opinion evidence.

Winkler's final argument is that the ALJ erred in forming her own RFC, rather than relying on the opinion of a physician.   As previously noted, an ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians."   *Martise,* 641 F.3d at 927.   Instead, the ALJ must determine a plaintiff's RFC based on her review of the record as a whole, as the ALJ did in this case.

The undersigned finds that the ALJ's RFC determination is supported by substantial evidence in the record as a whole.   Specifically, as addressed in significant detail above, the ALJ properly addressed the consistency of Winkler's subjective complaints and in doing so, conducted a complete and detailed analysis of Winkler's medical record, his activities of daily living, ability to walk half a mile, failure to take prescribed medications, the fact that he stopped working due to a lay off, and his receipt of unemployment benefits.   The ALJ additionally properly addressed the medical evidence of record and the lack of significant findings on examination.   The ALJ nonetheless credited Winkler's subjective complaints to some extent in finding greater restrictions than those found by Dr. Trowbridge.   Winkler fails to demonstrate the presence of greater limitations than those found by the ALJ.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of September, 2020.